# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JASON STEWARD | § | |
| | § | |
| v. | § | Civil Action No.  4:17-CV-00722 |
| | § | Judge Mazzant |
| KEHE DISTRIBUTORS, INC. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant KeHE Distributors, Inc.'s ("KeHE") Motion for

Summary Judgment (Dkt. #20).  After reviewing the relevant pleadings, the Court finds that the

motion should be granted.

## BACKGROUND

On November 25, 2015, KeHE offered Plaintiff Jason Steward ("Steward") employment

as a warehouse supervisor.  Before his employment, Steward signed two documents.  The first, a

letter from KeHE's senior director of operations to Steward, explained that Steward's employment

was at-will and Steward or KeHE could end his employment at any time.  The second, a document

entitled "Acknowledgment of Employee Handbook," stated:

> I further understand that, unless I have a written agreement signed by either KeHE's
> President or Senior Vice President, Human Resources to the contrary, my
> employment with KeHE is terminable "[at-will]" and I do not have an employment
> contract for any duration of time.  This means that I am free to terminate my
> employment with KeHE at any time, with or without reason.  Likewise, KeHE has
> the right to terminate my employment at any time, with or without reason, in the
> discretion of KeHE.

(Dkt. #21, Exhibit 4 at p. 2).  On or about December 7, 2015, Steward began working for KeHE.

On December 29, 2016, Era Vaughn ("Vaughn"), KeHE's director of operations, sent an

e-mail to Steward and other supervisors, outlining the procedures that KeHE's supervisors must

follow before taking vacation, specifically, the process for oversight and approval of hourly

employees' time records.  Vaughn's e-mail stated "[i]t is my expectation that weekly we must ensure all incentive pay is accurate and [paid] on time to our associates.  If you are going on [paid time off] this must be addressed and/or passed off to someone on the leadership team to complete in your absence."  (Dkt. #21, Exhibit 5 at p. 2).

Before going on vacation in February 2017, Steward delegated his timekeeping responsibilities to Chad Wright ("Wright"), who was not a supervisor, but an hourly team lead. Steward gave his personal supervisory access and password to KeHE's timekeeping system to Wright.  While Steward was on vacation, Wright accessed KeHE's timekeeping records and changed his own time records to show that he was working when he was really not.  KeHE's employees also caught Wright sleeping on the job.  KeHE terminated Steward because he gave Wright unauthorized access to KeHE's supervisory timekeeping records.  The parties do not dispute these facts.

On September 6, 2017, Steward filed a breach of contract suit in Texas state court, claiming that Vaughn's e-mail formed an employment contract, changed his at-will employment status, and prohibited KeHE from firing him for giving his access to the employee timekeeping software to Wright.  On September 29, 2017, KeHE removed the suit to federal court.  On March 22, 2018, KeHE filed its Motion for Summary Judgment (Dkt. #20).  On April 3, 2018, Steward filed his response (Dkt. #22).  On April 10, 2018, KeHE filed its reply (Dkt. #23).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material.  *Id.*  The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the Court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.  If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).  A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 257.  Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden.  Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment.  *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440

(5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Steward argues that Vaughn's e-mail created an employment contract that altered his at-will employment status and precluded KeHE from firing him for following Vaughn's orders. KeHE counters that Vaughn's e-mail did not change Steward's status as an at-will employee. Thus, KeHE argues it could terminate Steward at any time with or without cause. Neither party disputes that Steward was an at-will employee before Vaughn's e-mail.

KeHE is entitled to summary judgment if there is no genuine dispute of material fact regarding Steward's breach of contract claim. *Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 322–23). To have a successful breach of contract claim, Steward must show that there was: "(1) a valid contract, (2) performed by [Steward], and (3) breached by [KeHE], (4) resulting in damage to [Steward]." *Id.*

It is well established that Texas is an employment-at-will state. *Thomas v. Long*, 207 S.W.3d 334, 341 (Tex. 2006). This means "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). For an employment agreement to exist, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* The discharged employee has the burden of proving the at-will relationship

was modified. *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

"Where a plaintiff relies on an employment policy, as opposed to an employment contract, to rebut the presumption of at-will employment, the proffered employment policy must contain explicit contractual terms altering the at-will relationship in a meaningful way (e.g., through an employment contract)." *Roberts v. Titus Cty. Mem'l Hosp.*, 129 F. App'x 82, 85 (5th Cir. 2005). "Texas courts are reluctant to imply deviation from at-will employment from ambiguous employment policies." *Id.* (citing *Brown*, 965 S.W.2d 501).

Steward exclusively relies on *Goodyear Tire and Rubber Company v. Portilla* to support his claim that KeHE modified his at-will employment status and agreed not to fire him for following Vaughn's instructions. 879 S.W.2d 47 (Tex. 1994). The facts in *Portilla*, however, are distinguishable from Steward's case. In *Portilla*, Goodyear fired the plaintiff, Hortencia Portilla, for violating its anti-nepotism policy. *Id.* at 48. Under the policy, any employee found to be working under the supervision of a relative had to accept a transfer or face termination, unless a company executive granted a specific exception to the policy. *Id.* at 49. Portilla began working for Goodyear in 1965. *Id.* at 48. About five years later, Portilla's brother, Reynaldo Reyes, became Portilla's supervisor. *Id.* In 1975, a Goodyear executive waived enforcement of the anti-nepotism policy against Portilla in writing. *Id.* at 50–51. The company's managerial personnel were aware of the relationship and the waiver. *Id.* at 48. In 1987, Goodyear's executives "rediscovered" that Reyes supervised Portilla, told Portilla she could either transfer or lose her job, and fired her after she did not transfer. *Id.* at 49. The Texas Supreme Court concluded that the Goodyear executive's express waiver of the anti-nepotism policy modified Portilla's status as an at-will employee. *Id.* at 51–52. The Texas Supreme Court reasoned that by expressly waiving enforcement of the

policy, Goodyear modified Portilla's at-will employment status and created a contract with Portilla, agreeing to not fire her for violating the policy. *See id.*

Steward claims his status as an at-will employee was likewise modified. Unlike in *Portilla*, however, KeHE never modified Steward's at-will employment status with an express agreement not to fire him for following Vaughn's instructions. In his deposition testimony, Steward even admits that KeHE never made any assurance that it would not fire him for following Vaughn's orders (Dkt. #21, Exhibit 9 at p. 9). As earlier mentioned, Steward also had no written employment contract with KeHE. Steward relies solely on his subjective interpretation of Vaughn's e-mail to support his claim that a contract formed and KeHE breached it. Vaughn's e-mail, however, is too general and vague to be considered an employment contract. After all, Vaughn's e-mail does not "unequivocally indicate a definite intent to be bound not to terminate [Steward] except under clearly specified circumstances," or "contain explicit contractual terms altering [Steward's] at-will relationship in a meaningful way. . . ." *Roberts*, 129 F. App'x at 85; *Brown*, 965 S.W.2d at 502. Accordingly, Steward's case is unlike *Portilla* and his employment status remained at-will.[1]

## CONCLUSION

After reviewing the parties' briefing, the Court concludes that KeHE did not alter Steward's at-will employment status, retained the right to fire Steward at its discretion, and did not breach an employment contract with Steward as no such contract existed.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #20) is hereby **GRANTED**.

---

[1] Steward also asserted that the Texas Workforce Commission's (the "TWC") finding that Wright was a member of Steward's "leadership team," as the term was used in Vaughn's e-mail, supports his claim and opposes summary judgment. This argument is misplaced because a determination by the TWC relating to unemployment benefits is not relevant to whether KeHE properly exercised its right to terminate Steward's at-will employment.

**SIGNED this 19th day of June, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE